IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**SOUTHGATE SHOPPING CENTER**                                                         **PLAINTIFF**

**VS.**                                                     **CIVIL ACTION NO.: 1:06CV105**

**WALMART STORES, INC.**                                                        **DEFENDANT**

**ORDER**

This cause comes before the court on the motion of defendant Walmart Stores, Inc. ("Walmart") to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff Southgate Shopping Center ("Southgate") has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion should be granted in part and denied in part.

This is a breach of contract action between commercial property owner Southgate and its lessee Walmart arising out of a contract for the lease of the Southgate Shopping Center located in Corinth, Mississippi. The complaint alleges that the lease agreement between Southgate and Walmart was originally signed in 1979 but that it was amended in 1985 and 1986. Under the terms of the lease agreement as amended, Walmart was required to pay Southgate a yearly minimum rent of $ 278,891.00 during a twenty year lease period beginning in 1985 and ending in 2005. In addition, the lease agreement required Walmart to pay Southgate one and one-half percent (1 ½%) of its gross sales over thirteen million dollars ($13,000,000) during each lease year. According to the complaint, Walmart served as the "anchor store" in its shopping center until 1993, when Walmart

1

vacated the premises and opened a new store a few miles away.

Plaintiffs filed the instant complaint on February 23, 2006. The complaint alleges that, while Walmart continued to pay the yearly rent required under the lease after leaving the Southgate property in 1993, it failed to pay the yearly percentage of gross sales amounts required under the contract. The complaint seeks these "percentage rents" as damages, and plaintiffs also seek consequential damages, including lost business, caused by Walmart's decision to vacate the shopping center. In seeking dismissal, defendant relies upon an argument that, even accepting the allegations in plaintiff's complaint as true, these claims are nevertheless barred by Mississippi's three-year statute of limitations. *See* Miss. Code Ann. § 11-1-49. This court is generally hesitant to consider statute of limitations arguments in the context of a 12(b)(6) motion to dismiss, but it is apparent that the pertinent facts regarding the contract in this case are not in dispute and that the statute of limitations issues in this case present pure issues of law. The court therefore concludes that the statute of limitations issues in this case are appropriately considered in the context of a 12(b)(6) motion to dismiss.

In the court's view, Mississippi law in this context was properly stated by the Mississippi Court of Appeals in the 2005 decision of *Kersey v. Fernald*, 911 So.2d 994 (Miss. App. 2005). In *Kersey*, the Court of Appeals considered an installment contract which required payments to be made in the amount of $200 per month, for a total of 100 payments, beginning in May 1995. The plaintiff in *Kersey* filed suit in January, 2003, seeking recovery under the contract. The chancellor found, and the Court of Appeals agreed, that the case was governed by a three-year statute of limitations in § 15-1-49 and ordered payment of the installments due as of January of 2000, i.e. three years prior to the filing of the complaint. In affirming the chancellor's ruling, the Court of Appeals noted that:

> In *Freeman v. Truitt*, 238 Miss. 623, 119 So.2d 765, 771 (1960), our supreme court found that: where a debt is payable in installments, the general rule is that the statute of limitations begins to run as to each installment from the time when it falls due; and the creditor can recover only those installments falling due within the statutory period before the beginning of the action. (Plaintiff) filed her complaint in January 2003. Thus, applying the three-year statute of limitations, plaintiff was entitled to collect the installments beginning in January of 2000.

*Kersey*, 911 So.2d at 996-97.

Based on *Kersey* and *Freeman*, the court concludes that Southgate is only entitled to sue in this case for the percentage rents which came due beginning February 23, 2003, (i.e. three years prior to this action being filed) until the end of the lease period on May 31, 2005. Plaintiff argues that it should be entitled to recover damages for the entire period of the lease under the "continuing wrong" doctrine, but it cites no Mississippi authority on point with regard to this issue. Instead, plaintiff cites federal authority from the Seventh Circuit applying Illinois law, as well as statutory provisions set forth in Mississippi statutes of limitations which do not apply to this case. The court finds this authority to be both inapplicable and unpersuasive within the particular context of this case. Clearly, Southgate knew that Walmart had vacated the leasehold premises in 1993, and this court can discern no good reason why Southgate should be permitted to wait until 2006 to file an action seeking consequential damages caused by Walmart's decision to vacate the premises. Southgate argues that, if it had sued within three years of 1993, it would have been forced to re-file actions in successive years, but this is plainly untrue. Clearly, Southgate could have sought declaratory and/or injunctive relief which would have precluded the need to keep re-filing breach of contract actions, and this argument therefore lacks merit.

Walmart argues that the three-year statute of limitations also precludes Southgate from suing for the percentage rents due from 2003 to 2005, but the court does not agree. Walmart submits that

3

the contract in this case is not a true installment contract and that *Kersey* is therefore inapplicable. Regardless of whether the contract in this case is a true installment contract, the court concludes that the installment contract situation in *Kersey* is analogous to the situation herein for statute of limitations purposes. Walmart cites authority which indicates that Southgate could have sued immediately for future rents due, but its authority on this point is less than clear. Even assuming that a party may, in fact, sue under Mississippi law for future rents due on a lease which is on a fixed payment schedule, the fact remains that the disputed portion of the lease in this case relates to the payment of *percentage rents* based upon Walmart's gross sales. Clearly, there is no way that Southgate could have known in 1993 what Walmart's gross sales in future years would be and accordingly no way that plaintiff could have sued for these amounts. With regard to the fixed rent portion of the lease, it seems clear that Walmart has continued to pay these amounts, and this portion of the contract has apparently not been breached. Accordingly, there is no apparent reason why Southgate should have sued for the fixed rent amounts in 1993 when Walmart continued to pay those amounts.

While the court thus concludes that the three-year statute of limitations does not bar all of plaintiff's claims for percentage rents, the court must note what appear to be substantive weaknesses in these claims. It seems clear that Southgate seeks to revisit issues arising from Walmart basic contractual right to vacate the Southgate premises in 1993. Southgate now appears to argue that, Walmart's continued payment of the fixed rent amounts due under the lease notwithstanding, Walmart's basic decision to vacate the Southgate premises constituted a breach of the lease agreement which led to the decline of the shopping center. Given the high stakes involved in this litigation, it is difficult for this court to accept that Southgate simply slept on its rights following

Walmart's decision to vacate the premises in 1993. By maintaining judicial silence for almost thirteen years, Southgate has left itself in an awkward position to argue in favor of damages occasioned by Walmart's decision to move. It seems doubtful to this court that Southgate would have failed to seek injunctive or declaratory relief in 1993 if the basic legality of Walmart's decision to vacate the premises while continuing to pay the basic rent amount was in serious doubt.

Statute of limitations issues aside, it is far from clear that Southgate is entitled to recover percentage rents at all in this case. The complaint alleges that a 1986 amendment required Walmart to pay Southgate one and one-half percent (1 ½%) of its gross sales over thirteen million dollars ($13,000,000) during each lease year. In its rebuttal brief, Walmart argues that it should not be held liable for any percentage rents due under the contract, given that these percentage rents were based on a percentage of Walmart's gross sales in excess of a specified dollar amount. Walmart argues that it has no liability for such percentage rents as a matter of law, given that it vacated the Southgate premises in 1993 and accordingly had no gross sales whatsoever on the leased property after this date. The court finds this argument to be rather persuasive,[1] but the fact remains that this argument was raised by Walmart in a rebuttal brief to a motion which was based solely on statute of limitations arguments. While Walmart may eventually prevail on this argument, the court concludes that it

---

[1] The question arises as to whether Southgate is seeking a percentage of gross profits which Walmart has earned at a completely different location since 1993. If Southgate is seeking a percentage of profits made by Walmart at its new location, this would raise serious questions as to whether Southgate should be entitled to a percentage of profits made by Walmart at a completely separate location as to which Southgate has presumably made no contribution and which was not the subject of the lease in the instant case. If Southgate is seeking a percentage of profits which Walmart would have made if it had stayed at its old location, then this would raise serious questions as to how Southgate could establish such hypothetical profits with any degree of certainty. The difficulty of these issues makes it abundantly clear why, if Southgate deemed Walmart's decision to move to be contrary to the lease agreement, it should have raised this issue in 1993 in proceedings seeking injunctive and/or declaratory relief.

5

should raise this issue in a separate motion to dismiss and/or (if discovery is required) for summary judgment so that Southgate has the opportunity to fully respond.[2]

At this juncture, the court simply concludes that Mississippi's three-year statute of limitations serves to limit plaintiff's claim under the lease agreement to those accruing between February 23, 2003 and May 31, 2005. Defendant's motion to dismiss [5-1] will therefore be granted in part and denied in part.

SO ORDERED, this the 17th day of November, 2006.

    /s/ Michael P. Mills
    **UNITED STATES DISTRICT JUDGE**

---

[2] If the parties have any additional facts, argument or authority which might cause this court to revisit the statute of limitations issue, then they may present those in the context of this motion as well.